# United States Court of Appeals
# for the Federal Circuit

---

**LELAND HEBERT,**
*Plaintiff-Appellant,*

*v.*

**ALLIED RUBBER & GASKET CO., INC.,**
*Defendant-Appellee.*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA
Case No. 3:20-cv-01350, District Judge Jinsook Ohta

---

## DEFENDANT-APPELLEE'S OPPOSED MOTION FOR SANCTIONS UNDER FED. R. APP. P. 38 AND FEDERAL CIRCUIT RULE 47.7

Steven J. Nataupsky,
  *Principal Counsel*
Jeremiah S. Helm
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, 14th Floor
Irvine, CA 92614
(949) 760-0404

*Counsel for Defendant-Appellee
Allied Rubber & Gasket Co., Inc.*

MAY 2, 2024

# CERTIFICATE OF INTEREST

Counsel for Defendant-Appellee Allied Rubber & Gasket Co., Inc. certifies the following:

1.    The full name of every party or amicus represented by me is:

Allied Rubber & Gasket Co., Inc.

2.    The name of the real party in interest represented by me is:

None.

3.    All parent corporation and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4.    The names of the law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in the Court are:

Jason Swartz, Knobbe, Martens, Olson & Bear, LLP.

5.    The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by the Court's decision in the pending appeal are as follows:

None.

6.    Information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees):

None.


Dated:  May 2, 2024        By: _/s/ Jeremiah S. Helm_____
                                    Jeremiah S. Helm

                                Attorneys for Defendant-Appellee,
                                ALLIED RUBBER & GASKET CO., INC.

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................... 1

STATEMENT OF CONSENT OR OPPOSITION ...................................... 2

FACTUAL BACKGROUND ...................................................................... 2

I.    The Initial Litigation ....................................................................... 2

II.   The Appeal ...................................................................................... 5

ARGUMENT .............................................................................................. 8

I.    Legal Standard ................................................................................ 8

II.   Mr. Hebert's Appeal Was Frivolous And Intended To Harm
Allied Rubber ................................................................................. 9

     A.    The Appeal Was Frivolous As Filed .................................... 9

     B.    The Appeal Was Frivolous As Argued .............................. 12

     C.    The Court Should Award Allied Rubber Attorneys' Fees ................ 19

CONCLUSION .......................................................................................... 20

# TABLE OF AUTHORITIES

**Page No(s).**

*In re Donaldson Co., Inc.*,
16 F.3d 1189 (Fed. Cir. 1994) (en banc) ......................................13, 16

*Finch v. Hughes Aircraft Co.*,
926 F.2d 1574 (Fed. Cir. 1991) ...........................................................17

*Frolow v. Wilson Sporting Goods Co.*,
710 F.3d 1303 (Fed. Cir. 2013) ...............................................*passim*

*Pop Top Corp. v. Rakuten Kobo Inc.*,
2022 WL 2751662 (Fed. Cir. July 14, 2022)..........................6, 19, 20

*State Indus., Inc. v. Mor-Flo Indus., Inc.*,
948 F.2d 1573 (Fed. Cir. 1991) ...............................................18, 19

*Walker v. Health Int'l Corp.*,
845 F.3d 1148 (Fed. Cir. 2017) ...................................................8, 9

## OTHER AUTHORITIES

35 U.S.C. § 112 ...............................................................................7, 13, 15

Fed. Cir. R. 27 ..................................................................................1, 2, 4

Fed. Cir. R. 47.7 .............................................................................1, 8, 20

Fed. R. App. P. 38 ..........................................................................*passim*

# INTRODUCTION

The first sentence in Allied Rubber's merits brief warned: "This appeal is simply frivolous." Allied Br. at 2. That was not mere rhetoric. At the outset of the appeal process, even before Mr. Hebert filed his opening brief, Allied Rubber put Mr. Hebert and his counsel on notice that "any pursuit of this appeal would be frivolous." Helm Declaration Ex. 1 at 1. Allied Rubber explained that it would "seek attorneys' fees and double costs under Federal Rule of Appellate Procedure 38 if you proceed with the appeal." *Id.* Mr. Hebert and his attorney ignored these warnings and continued on with a bare-bones appeal designed not to succeed, but solely to make Allied Rubber spend money. Mr. Hebert's appeal was frivolous as filed and, more so, as argued.

Pursuant to Federal Rules of Appellate Procedure 27 and 38, and Federal Circuit Rules 27 and 47.7, Appellee Allied Rubber now moves for its attorneys' fees and double its non-taxable[1] travel costs for defending this appeal. For the reasons set forth below, Allied Rubber further seeks to hold Mr. Hebert and his counsel jointly and severally liable for these fees and costs.

---

[1] Allied Rubber's taxable costs associated with this appeal were negligible.

## STATEMENT OF CONSENT OR OPPOSITION

Pursuant to Fed. Cir. R. 27(a)(2), Allied Rubber through its counsel discussed this motion with Mr. Hebert's counsel. Mr. Hebert's counsel indicated that Mr. Hebert will oppose the motion. Helm Declaration ¶ 11.

## FACTUAL BACKGROUND

### I.  The Initial Litigation

This appeal is the result of an ex-employee, Leland Hebert, suing his former employer, Allied Rubber. Appx003; Appx384 ¶¶20-21. After he was fired from his position at Allied Rubber, Mr. Hebert filed suit asserting a panoply of claims that ranged from patent infringement to false marking to unfair competition. Appx001; Appx285. During the litigation, Mr. Hebert took almost no discovery and instead relied on his own declaration to opine on Allied Rubber's products as "evidence" of infringement. Appx009-11.

During claim construction, the District Court considered the term "adjustment mechanism mechanically connected between said smooth collar and said threaded collar for adjusting a distance between said fixed jaw and said adjustable jaw." Appx245-47. The Court applied a means-plus-function construction to this term, and determined that the corresponding structure described in the specification was "an actuator wheel, a smooth shaft extending from a first side of the wheel and attached to the smooth collar, and a threaded

shaft extending from an opposing second side of the wheel and attached to the threaded collar." Appx247. That structure generally corresponds to the structure in '931 Patent, Figure 2 (below).



Fig. 2

Appx031.

None of Allied Rubber's accused products include an actuator wheel with a smooth shaft extending from a first side of the wheel and a threaded shaft extending from an opposing second side of the wheel, let alone in combination with all the other claimed features. Appx010-11. Accordingly, Allied Rubber moved for summary judgment of no infringement. Appx001.

In opposition, Mr. Hebert relied on an understanding of the term "shaft" as meaning a hole, like a mine shaft or elevator shaft. Appx011. Mr. Hebert never explained or provided evidence how a hole could "extend[] from" an actuator

wheel, be smooth or threaded, or otherwise attach to a smooth or threaded collar. *Id*. And Mr. Hebert never identified a feature in any accused product that had a shaft extending from an actuator wheel that is smooth on one side and threaded on the other. *Id*.; *see also, e.g.,* Appx329 (Hebert "Report"); Appx420 (Hebert Opposition).

The District Court granted summary judgment of no infringement for multiple independent reasons. Appx007-13. One of the Court's reasons was that Mr. Hebert's proffered evidence did not establish infringement under the court's means-plus-function construction. Appx010-11. The Court rejected Mr. Hebert's declaration as not showing an actuator wheel with both a smooth feature extending from one side and a threaded feature extending from the other side. Appx011. And the Court rejected Mr. Hebert's assertion that a hole in the middle of an actuator wheel was a shaft extending from the actuator wheel. *Id*.

Another of the Court's reasons was that Allied Rubber did not infringe because there was no threaded collar. Appx007-09. The Court previously construed the claims to require a collar with a "threaded interior wall," which requires a "helical-shaped groove." Appx008. Mr. Hebert, however, only submitted evidence of a "solid cylinder that has eight parallel ridges on its exterior edge, rather than on an interior surface." Appx009. The Court explained a "solid

object…does not have an inner surface" and thus cannot meet the properly construed claims. Appx009.

Finally, the District Court rejected Mr. Hebert's argument that patent marking creates a *per se* rule that prevented summary judgment of no infringement. Appx012-13. The District Court considered the totality of the evidence before it and concluded that "the history of the relationship between Plaintiff [Mr. Hebert] and Defendant [Allied Rubber] explains how Defendant's Recessed Wrenches came to be marked with Plaintiff's patent number." Appx012.

The District Court granted Allied Rubber summary judgment on all of Mr. Hebert's causes of action. Appx001-20. Despite raising many different causes of action at the District Court, Mr. Hebert only appealed the judgment of no infringement.

## II.    **The Appeal**

Mr. Hebert, through his attorney Matthew Wawrzyn, filed a Notice of Appeal on October 25, 2022. Appx506. On November 14, 2022, Allied Rubber sent Mr. Wawrzyn a letter explaining that any appeal would be frivolous. Helm Declaration Ex. 1 at 1. Among other things, Allied Rubber explained in the letter that Mr. Hebert's theory of infringement was contrary to the express claim requirements. *Id.* Allied Rubber also explained that Mr. Hebert's non-patent causes of action were likewise unsupported. *Id.* at 1-2. And, Allied Rubber noted

to Mr. Wawrzyn "that the Federal Circuit recently sanctioned you and another one of your clients in an amount exceeding $100,000 for your pursuit of a frivolous patent appeal under similar circumstances. *See Pop Top Corp. v. Rakuten Kobo Inc.*, 2022 WL 2751662 (Fed. Cir. July 14, 2022)." *Id.* at 2.

From the start, Allied Rubber put Mr. Hebert, and his counsel Mr. Wawrzyn, on notice that any appeal would be frivolous. *Id.* Allied Rubber's concern was well founded. Despite Allied Rubber's warning, Mr. Hebert nevertheless proceeded with his appeal and submitted two barebones briefs with only a handful of pages of argument. Hebert Br. 7-14; Reply 2-11.

Notably, Mr. Hebert's appeal did not challenge the District Court's means-plus-function construction, analyze the specification's structure, or compare Allied Rubber's wrenches to that structure. Hebert Br. 10-13; Reply 7-10. Instead, Mr. Hebert argued that the Court should apply a dictionary definition for the term "shaft" relevant to mine or elevator shafts. *Id.* (citing Appx199). Mr. Hebert never explained how such a definition was appropriate in the context of a wrench, or how such a definition was consistent with the unchallenged means-plus-function construction or the requirement that a shaft extend from the actuator wheel. *Id.* Mr. Hebert knew this definition was irrelevant because at his deposition Mr. Hebert agreed that the term "shaft" in his patent means a long cylindrical bar or pole. Appx293.

Mr. Hebert also argued that the Court's decision in *Frolow v. Wilson* foreclosed summary judgment. Hebert Br. at 13-14. Mr. Hebert cited (1) that Allied Rubber forwarded drawings from Mr. Hebert that contained a patent number on to a manufacturer and (2) a contract between the parties. *Id.*; Reply at 10-11. Mr. Hebert did not dispute or address any of the facts relied on by the District Court, and did not consider the circumstances as a whole, as *Frolow* requires. *Id.*

Despite his terse briefing, Mr. Hebert demanded an oral argument. D.I. 24. During oral argument, Mr. Hebert's counsel, Mr. Wawrzyn conceded there was no challenge to the means-plus-function construction. https://oralarguments.cafc.uscourts.gov/default.aspx?fl=23-1511_04022024.mp3 ("Oral Argument Recording") at 24:45-25:16. Instead, Mr. Wawrzyn asserted the means-plus-function construction did not have anything to do with the "shaft" term. *Id.* at 23:51-24:44. Mr. Wawrzyn's oral argument conflicted with the District Court's Order Construing Claims, which construed "adjustment mechanism" pursuant to 35 U.S.C. § 112 ¶ 6 as requiring "an actuator wheel, a ***smooth shaft extending*** from a first side of the wheel and attached to the smooth collar, and a ***threaded shaft extending*** from an opposing second side of the wheel and attached to the threaded collar." Appx247 (emphasis added).

Mr. Wawrzyn also raised an argument that, notwithstanding the District Court's construction and the claim's plain language, the term "tubular" in claim 8 required a solid structure without an inner surface. Oral Argument Recording at 21:45-23:30. Mr. Hebert's briefing to this Court never previously raised this argument. Hebert Br. at 7-9; Reply at 2-7.

The day after oral argument, this Court affirmed the grant of summary judgment without opinion. Judgment, D.I. 32. Pursuant to Federal Circuit Rule 47.7(a)(2) Allied Rubber timely filed this motion for sanctions pursuant to Federal Rule of Appellate Procedure 38 within 30 days of the Court's Judgment.

## ARGUMENT

### I.    Legal Standard

Federal Rule of Appellate Procedure 38 provides: "If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." The Federal Circuit's practice notes to Rule 38 explain that the Court, from its inception, has "established the policy of enforcing this rule vigorously." Federal Circuit Rules of Practice, Notes to Rule 38. "Frivolous appeals waste both the public resources supplied to this court and the resources of prevailing litigants that must defend such frivolous actions." *Walker v. Health Int'l Corp.,* 845 F.3d 1148, 1156 (Fed. Cir. 2017).

There are two ways that an appeal can be frivolous under Rule 38. First, "an appeal is frivolous as filed when 'the judgment by the tribunal below was so plainly correct and the legal authority contrary to appellant's position so clear that there really is no appealable issue.'" *Id*. at 1154 (citations omitted). Second, an appeal can be "frivolous as argued," including "by distorting the record, by disregarding or mischaracterizing the clear authority against its position, and by attempting to draw illogical deductions from the facts and the law." *Id*. (cleaned up).

## II.  <u>Mr. Hebert's Appeal Was Frivolous And Intended To Harm Allied Rubber</u>

### A.  The Appeal Was Frivolous As Filed

Mr. Hebert is a disgruntled ex-employee who used the litigation process to attack Allied Rubber for imaginary slights. During the District Court proceedings, Mr. Hebert admitted that he intended to claim wrenches with a shaft, meaning a bar- or pole-like feature. Appx363. And during the District Court proceedings Mr. Hebert did not dispute that he (1) initially supplied Allied Rubber with marked wrenches; (2) was the person who directed the manufacturing of the wrench that included his own patent number, or (3) that Allied Rubber initially assumed but later doubted that Mr. Hebert's marking was correct. Appx002-03; Appx012-13. Given the clear differences between Mr. Hebert's patent and Allied Rubber's products, and the undisputed facts regarding Mr. Hebert's leading role in the patent

number being on the wrenches, the District Court granted summary judgment of no infringement. Appx001-19; Appx20.

Mr. Hebert appealed and Allied Rubber promptly put Mr. Hebert on notice that his appeal was frivolous as filed via a letter to Mr. Hebert's counsel. Helm Declaration Ex. 1. Among the many issues explained by Allied Rubber's letter, and later its responsive brief, was the fact that Mr. Hebert nonsensically argued at the District Court that a solid piece of metal, without an inner surface or any threading, was a threaded collar. *Id*. Mr. Hebert's briefs reiterated this frivolous position. Hebert Br. at 7-9; Reply at 2-7. But at oral argument Mr. Hebert's counsel, Mr. Wawrzyn, seemingly abandoned the theory that a "collar" necessarily included a solid piece of metal and instead argued that it was independent claim 8's requirement that the collar be "tubular" that meant the collar could be a solid piece of metal. Oral Argument Recording at 21:45-22:30.

Mr. Wawrzyn's new and spontaneous argument, taking a position never previously advanced in the appeal,[2] illustrates that Mr. Hebert's prior infringement positions were never reasonable and the appeal was frivolous as filed. Moreover, Mr. Wawrzyn's "tubular" improvisation still ignored the claim language, which requires a "threaded collar comprising a tubular member having [a] ***threaded***

_____

[2] Mr. Hebert's briefs only mention claim 8's "adjustment recess." Hebert Br. at 12; Reply at 9.

*interior wall*." Appx041. Despite his shifting position, Mr. Wawrzyn still could not identify a threaded interior wall, and concocted yet another frivolous argument.

Mr. Hebert's appeal of *Frolow*-related arguments was also frivolous as filed. At the District Court, Mr. Hebert took the position that this Court's holding in *Frolow v. Wilson Sporting Goods Co.*, 710 F.3d 1303 (Fed. Cir. 2013), creates *per se* infringement liability. Appx012. *Frolow* expressly rejected the idea that patent marking creates *per se* liability. 710 F.3d at 1308-09. Instead, *Frolow* explained that "whether a party's marking, in view of the record as a whole, raises a genuine issue of material fact, will depend on the facts of each case." *Id*. at 1310. The District Court correctly rejected Mr. Hebert's legally erroneous argument that "patent marking…*per se*" creates liability, and correctly analyzed the undisputed facts surrounding Mr. Hebert's active role in causing the patent marking. Appx012. When Mr. Hebert appealed the District Court's *Frolow* analysis, he propagated his frivolous position into the appeal as filed. Hebert Br. 13-14. As discussed below, Mr. Hebert's appeal was also frivolous as argued.[3]

---

[3] Allied Rubber believed that the clearly reasoned Summary Judgment order would dissuade Mr. Hebert from further action. Allied Rubber did not seek attorneys' fees at the District Court so as to avoid extending the proceedings with its disgruntled ex-employee, Mr. Hebert. Allied Rubber's optimism was misplaced since Mr. Hebert subsequently filed and prosecuted this frivolous appeal.

## B.    The Appeal Was Frivolous As Argued

Mr. Hebert's appeal, as argued, was not designed to succeed, but just to run up Allied Rubber's fees and costs as animus towards Allied Rubber for firing Mr. Hebert.    To this end, Mr. Hebert, through his counsel, filed underdeveloped briefing (Mr. Hebert's Opening brief was a scant fourteen pages with a mere seven pages of argument, and his Reply was only eleven pages, even including several large pictures).    This brevity was not warranted.    Rather, Mr. Hebert's briefing somehow managed to be simultaneously perfunctory and rambling, and was largely devoid of any coherent legal argument.    Allied Rubber nevertheless was forced to file a written response.    And, despite submitting minimalist briefing, Mr. Hebert demanded an oral argument.    This ensured Allied Rubber's California-based counsel would have to travel across the country.

Mr. Hebert's appeal could not succeed as argued because he did not challenge the District Court's means-plus-function construction, an independent basis for the District Court's judgment.  Hebert Br. 10-13; Reply 7-10.  There is no colorable claim for infringement under the District Court's means-plus-function construction of "adjustment mechanism."    But Mr. Hebert's appeal ignored the District Court's construction entirely.    Mr. Hebert never even mentioned the patent's disclosure in his appeal arguments, let alone identified any structure associated with the claimed "adjustment mechanism."    *Id*.    Instead, Mr. Hebert

nonsensically argued that a dictionary definition should be used to understand the word "shaft" in the District Court's construction for "adjustment mechanism." Hebert Br. at 10; Reply at 7 (citing Appx199). And, despite a patent directed to a wrench and an admission by Mr. Hebert himself about the meaning of shaft, Mr. Hebert advocated on appeal a completely irrelevant dictionary definition of shaft that related to an elevator or mine. *Id.*

This legally improper approach ignored the independent basis for the District Court's summary judgment, the patent statute, and well-settled precedent. By statute, a means-plus-function claim "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof," 35 U.S.C. § 112 ¶ 6, not a dictionary. This Court's *en banc* precedent confirms that "one construing means-plus-function language in a claim **must** look to the specification and interpret that language in light of the corresponding structure, material, or acts described therein, and equivalents thereof, to the extent that the specification provides such disclosure." *In re Donaldson Co., Inc.*, 16 F.3d 1189, 1193 (Fed. Cir. 1994) (en banc) (emphasis added). Mr. Hebert's argument that a general purpose dictionary should control the means-plus-function construction of "adjustment mechanism" is frivolous and disregards clear authority against his position.

Mr. Hebert also ignored this Court's precedent in *Frolow*, which held that when a party marks a patent number on its own product, it is at most inconclusive, rebuttable evidence of infringement. 710 F.3d at 1308-09. As such, patent marking alone does not create a *per se* triable issue of fact sufficient to avoid summary judgment. *Id.* at 1310. "[I]f it is beyond dispute that the accused product was mis-marked, summary judgment will be appropriate." *Id.* Here, Mr. Hebert's appeal did not even address the District Court's grant of summary judgment based on the means-plus-function construction, which was an independent basis for the decision of no infringement. Hebert Br. 10-13; Reply 7-10. As argued, it was "beyond dispute" that Allied Rubber did not infringe, and thus that the product was mis-marked.

Mr. Hebert's *Frolow* argument was likewise frivolous because it simply ignored the large swaths of undisputed evidence that explained how Mr. Hebert's patent number ended up on the accused wrench. Mr. Hebert started as a supplier to Allied Rubber and placed his own patent number on his wrench. Appx002. To aid Mr. Hebert in addressing quality issues, Allied Rubber helped Mr. Hebert find a new manufacturer, and Mr. Hebert provided the plans for a wrench that included his patent number. *Id.* Mr. Hebert interacted with the manufacturer and confirmed the wrench should be marked with Mr. Hebert's patent number. Appx002-003.

The manufacturer dutifully followed Mr. Hebert's instructions. Appx002-003, Appx012-013.

Even after he became an Allied Rubber employee, no one at Allied Rubber other than Mr. Hebert communicated with the manufacturer about the patent number. Appx384 ¶¶ 19, 21; Appx393 ¶ 8. Unrebutted and unequivocal declarations from Allied Rubber's CEO and the Chinese manufacture established these facts. Appx377-407. The correct *Frolow* analysis requires consideration of any evidence of the circumstances surrounding the marking, as well as evidence of mis-marking. *Frolow,* 710 F.3d at 1309-10. Mr. Hebert's appeal, contrary to *Frolow*, ignored the undisputed evidence cited in the District Court's judgment. Hebert Br. 13-14; Reply 10-11.

Moreover, during oral argument Mr. Hebert's counsel misrepresented the record to the Court. Mr. Wawrzyn analogized this case to *Frolow* because "Allied *was paying* royalties" to Mr. Hebert and cited paragraph 38 of Mr. Hebert's "expert report." Oral Argument Recording 23:30-51. But that paragraph states Mr. Hebert "negotiated a reasonable royalty," not that Allied Rubber ever *paid* Mr. Hebert a royalty. Appx315. In contrast to Mr. Wawrzyn's representation to the Court, Mr. Hebert admitted Allied Rubber "did *not* pay Mr. Hebert a royalty." Appx071 (emphasis original). Mr. Hebert's District Court briefing likewise asserted "Mr. Hebert has not received royalty payments for the marked wrenches."

Appx430.  Mr. Wawrzyn's misrepresentation is important because *Frolow* held continuous royalty payments were evidence that might foreclose summary judgment.  *Frolow*, 710 F.3d at 1310-12.  Mr. Wawrzyn's assertion that "Allied ***was paying*** royalties" directly conflicts with Mr. Hebert's prior assertions.

By raising frivolous arguments—that a dictionary definition could define the scope of the "adjustment mechanism" or that marking *per se* creates a triable issue of fact—Mr. Hebert prolonged the litigation process to Allied Rubber's detriment. Indeed, even after receiving Allied Rubber's brief, which cited both 35 U.S.C. §112 ¶6 and *Donaldson*, and which explained the circumstances surrounding patent marking, Mr. Hebert still disregarded the clear authority against his position. Instead of withdrawing his appeal, Mr. Hebert further increased the cost for Allied Rubber's defense by demanding an oral argument instead of waiving argument and submitting the case on the briefing.  D.I. 24.

Mr. Hebert's briefing was not the end of it.  At oral argument Mr. Hebert's counsel, Mr. Wawrzyn, misrepresented the record and confusingly asserted that "there is simply no tying of that 112 paragraph 6 construction to shaft." Oral Argument Recording at 24:09-44.  This bizarre and new argument ignores the District Court's Order Construing Claims, which sets forth that the "adjustment mechanism," consistent with the specification, must have "an actuator wheel, a ***smooth shaft extending*** from a first side of the wheel and attached to the smooth

collar, and a ***threaded shaft extending*** from an opposing second side of the wheel and attached to the threaded collar." Appx247 (emphasis added). The District Court expressly granted summary judgment based on the requirement that the shaft ***extend from*** the actuator wheel. Appx005, Appx010-011. For Mr. Wawrzyn to argue that "there is simply no tying of that 112 paragraph 6 construction to shaft" conflicts with the clear and extensive record to the contrary.

Mr. Hebert's appeal, as argued by Mr. Wawrzyn, includes many of "[t]he sorts of post-filing conduct that this and other circuit courts have determined to be frivolous under Rule 38." *Finch v. Hughes Aircraft Co.*, 926 F.2d 1574, 1579 (Fed. Cir. 1991). These include:

- Submitting briefs "that make no attempt to address the elements requisite to obtaining reversal." *Id*. Mr. Hebert never challenged the 112 ¶ 6 construction, an independent basis for summary judgment.

- "[F]ailing to explain how the lower tribunal erred or to present clear or cogent arguments for overturning the decision below." *Id*. Mr. Hebert incoherently argued that a "shaft extending from" either side of an actuator wheel could be met by a hole through the middle of the actuator wheel, and presented *Frolow* arguments without reference to the surrounding circumstances. The District Court expressly relied on both for its judgment.

- "[C]itation of inapplicable or irrelevant authorities." *Id*. Mr. Hebert argued that a dictionary definition could control a 112 ¶ 6 construction contrary to law and statute.

- "[M]isrepresenting facts or law to the court." *Id*. At oral argument, Mr. Hebert took the position that the District Court's summary judgment was unrelated to a shaft extending from an adjustment mechanism, and advanced a new "tubular" argument that ignored the claim's language. Mr. Hebert also asserted there were ongoing royalty payments despite previously admitting Allied Rubber did not pay royalties.

Ultimately, Mr. Hebert's appeal only challenged one of the two independent bases for summary judgment of no infringement. See Appx008; Appx010-011 (holding no infringement for lack of two different limitations). One out of two is not enough. As argued, no basis for reversal could exist since an independent ground for summary judgment went unchallenged. Instead, Hebert's arguments required "disregarding or mischaracterizing the clear authority against its position, and by attempting to draw illogical deductions from the facts and the law." *State Indus., Inc. v. Mor-Flo Indus., Inc*., 948 F.2d 1573, 1579 (Fed. Cir. 1991). "Where a party blindly disregards long established authority and raises arguments with no factual foundation the judicial process has not been used, but abused, and sanctions

under Rule 38 are warranted." *Id*. at 1581 (cleaned up). Such abuse is exactly what occurred here. Sanctions are appropriate.

### C. The Court Should Award Allied Rubber Attorneys' Fees

In view of Mr. Hebert's frivolous appeal, Allied Rubber should be awarded double costs in addition to its attorneys' fees as just damages for having to defend against an appeal that could not result in the requested judgement. As set forth in the attached declaration, Allied Rubber incurred attorneys' fees of $49,374.83 and non-taxable travel costs of $1,186.14 to defend this appeal, incurred $12,483.95 in attorneys' fees while preparing this motion, and anticipates an additional approximately $3,500 in attorneys' fees to finalize this motion. Helm Declaration ¶¶ 6-7, 10, Ex. 2. The time spent on this matter was reasonable. Helm Declaration ¶¶ 8-9, Ex. 3. But the expenditure defending this appeal nevertheless impacts Allied Rubber. "[T]he amount of a damage award is within the discretion of an appellate court" and may be "a fixed amount reflecting an appropriate penalty rather than a precise sum based upon proof of the appellee's actual attorney fees." *State Indus.*, 948 F.2d at 1581.

"Sanctions are awarded to compensate the victimized party for the burden of continued litigation in what long ago should have been a settled matter, as well as to discourage frivolous appeals which unnecessarily clog our docket." *Id*. at 1582. Rule 38's deterrence function is particularly applicable in this case, as this is not

the first time Mr. Wawrzyn, Mr. Hebert's counsel, has been involved in a frivolous appeal. The Court previously found that Mr. Wawrzyn and another of his clients pursued a frivolous appeal and imposed over $100,000 in sanctions, jointly and severally. *See Pop Top Corp. v. Rakuten Kobo Inc.*, 2022 WL 2751662 (Fed. Cir. July 14, 2022). That apparently was not a strong enough message, since soon thereafter Mr. Wawrzyn pursued this frivolous appeal against Allied Rubber. And this appeal involved many of the same offending acts as *Pop Top*, including by shifting positions on appeal and manufacturing arguments that distorted or ignored the record. *Id*. at *2-*3. Sanctions are warranted not only to compensate Allied Rubber, but also to further deter still more frivolous appeals.

## CONCLUSION

For forgoing reasons and pursuant to Federal Rule of Appellate Procedure 38 and Federal Circuit Rule 47.7, Allied Rubber respectfully requests the Court award it attorneys' fees and double the non-taxable travel costs for litigating this frivolous appeal. Allied Rubber asks that the Court's award be assessed jointly and severally against Mr. Hebert and his counsel Mr. Wawrzyn.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: May 2, 2024     By: /s/ *Jeremiah S. Helm*
                              Steven J. Nataupsky
                              Jeremiah S. Helm

Counsel for Defendant-Appellee,
ALLIED RUBBER & GASKET CO., INC.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

Counsel for Defendant-Appellee Allied Rubber & Gasket Co., Inc. certifies the following:

1.     This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure Rule 27(a)(2)(A) and Federal Circuit Rule 32(b).

This brief contains 4,249 words, excluding the parts exempted by Federal Circuit Rule 32(b).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6).

This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.


Dated:  May 2, 2024                    By: /s/ *Jeremiah S. Helm*
                                       Jeremiah S. Helm

                                       Counsel for Defendant-Appellee,
                                       ALLIED RUBBER & GASKET CO., INC.

# United States Court of Appeals for the Federal Circuit

**LELAND HEBERT,**
*Plaintiff-Appellant,*

*v.*

**ALLIED RUBBER & GASKET CO., INC.,**
*Defendant-Appellee.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA
Case No. 3:20-cv-01350, District Judge Jinsook Ohta

**DECLARATION OF JEREMIAH S. HELM IN SUPPORT OF
DEFENDANT-APPELLEE'S MOTION FOR SANCTIONS
UNDER FED. R. APP. P. 38 AND FEDERAL CIRCUIT RULE 47.7**

I, Jeremiah S. Helm, declare as follows:

1.     I am a partner at Knobbe Martens Olson & Bear LLP ("Knobbe"), counsel of record for Defendant-Appellee Allied Rubber & Gasket Co., Inc. ("Appellee" or "Allied Rubber") in the above-captioned appeal.  I am an attorney duly licensed to practice law in the State of California and before the Court of Appeals for the Federal Circuit.  I have personal knowledge of the facts in this declaration, and if called and sworn as a witness, could testify competently to them.  I make this declaration in support of Appellee's Motion for Sanctions Under Fed. R. App. P. 38 and Federal Circuit Rule 47.7.

2.     Attached to this declaration as **Exhibit 1** is a true and correct copy of the letter sent to the appellant on November 14, 2022.

3.     Attached to this declaration as **Exhibit 2** is a true and correct copy of an email listing non-taxable travel costs associated with attending the oral argument.

4.     Attached to this declaration as **Exhibit 3** is an excerpt of the AIPLA 2023 Report of the Economic Survey.

5.     Work performed on this appeal was carried out by five attorneys at Knobbe.  These Knobbe attorneys recorded their time using codes specific to the Allied Rubber appeal and recorded the tasks corresponding to the billing for each day.  I relied on this data for this declaration.

6. The below table identifies attorneys at Knobbe who worked on this appeal through argument. The hourly rates for each attorney, the hours billed, and the total amount invoiced for each attorney's work are identified. The total attorney fees for this case through the argument is $49,374.83.

| Attorney | Hourly Rate ($) | Hours Billed | Total |
|---|---|---|---|
| Steven Nataupsky | 992.75 / 1,054.50 | 2.0 | $2,034.90 |
| Paul Stewart | 855.00 | 21.9 | $18,640.90 |
| Jason Swartz | 774.25 / 750.50 / 698.25 | 15.9 | $12,020.80 |
| William Zimmerman | 992.75 | 0.6 | $595.65 |
| Jeremiah Helm | 769.50 | 20.9 | $16,082.58 |

7. In addition, Allied Rubber seeks attorney fees related to preparing and filing this motion pursuant to Fed. R. App. P. 38 and Federal Circuit Rule 47.7, through April 30, 2024. The table below identifies the Knobbe attorneys who worked on this appeal through April 30, 2024. The hourly rates for each attorney, the hours billed, and the total amount for each attorney's work are identified. The total recorded fees for preparing this motion through April 30 is $12,483.95. In addition to the billings below, I anticipate it will cost approximately four additional hours of attorney time to finalize this motion, with approximately $3,500 in additional fees.

| Attorney | Hourly Rate ($) | Hours Billed | Total |
|---|---|---|---|
| Jason Swartz | 774.25 | 3.8 | $2,942.15 |
| Jeremiah Helm | 769.50 | 12.4 | $9,541.80 |

8.    The hourly rates charged by Knobbe related to this appeal are reasonable. Knobbe attorneys routinely represented clients in complex intellectual property litigations filed in many different District Courts, in proceedings at the U.S.P.T.O., and in appeals at the Court of Appeals for the Federal Circuit, as well as other appellate courts. Knobbe was recently recognized by Managing IP as Firm of the Year: Patent Disputes (West). *See* https://www.knobbe.com/news/knobbe-martens-named-regional-patent-disputes-firm-year-2024-managing-ip-americas-awards.

9.    Knobbe's rates for this appeal are consistent with rates charged by similar firms. For example, as shown in Exhibit 3, the AIPLA's 2023 Report of the Economic Survey at I-34, the median hourly billing rate for equity partners at firms with more than 150 full time intellectual property lawyers and agents in the firm is $1,015, with a mean of $1,026. The Knobbe attorneys who worked on this matter are equity partners with many years of experience, including experience at the Federal Circuit. Knobbe invoiced Allied Rubber based on hourly billing rates at or substantially below the median rate for attorneys at comparable firms. The hours spent working on the appeal are also reasonable, and the hours identified in this declaration are hours actually billed or recorded time that will be billed to the client. Invoices are routinely reviewed by Knobbe before being issued to ensure accuracy and that they reflect only work appropriately billed as attorney time. In

addition, the experience of the Knobbe attorneys allowed us to work particularly efficiently on this matter.

10.     In addition, Allied Rubber seeks non-taxable costs associated with travel for the oral argument for this appeal. Exhibit 2 is an email showing the cost for an Economy class flight from California to Washington, D.C. for the oral argument was $1,186.14. Allied Rubber is not seeking any other non-taxable costs, such as the cost for searching and obtaining documents from PACER or Westlaw.

11.     On May 1, 2024, counsel for Plaintiff-Appellant Leland Hebert stated that he would oppose this motion.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on May 2, 2024 at Irvine, California.


*/s/ Jeremiah S. Helm*
Jeremiah S. Helm

# EXHIBIT 1

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

2040 Main St., 14th Fl., Irvine, CA 92614
**T** (949) 760-0404

Paul A. Stewart
Paul.Stewart@knobbe.com

**VIA FEDEX**

November 14, 2022

Matthew M. Wawrzyn, Esq.
WAWRZYN LLC
200 Randolph Street, Suite 5100
Chicago, IL 60601

Re:     Appeal of Judgment in *Hebert v. Allied Rubber & Gasket Co., Inc.*
        Our File No. ALRUGL.001LA

Dear Matt:

We were disappointed to learn that you have filed a Notice of Appeal of the District Court's judgment in this case. In our view, any pursuit of this appeal would be frivolous, and we plan to seek attorneys' fees and double costs under Federal Rule of Appellate Procedure 38 if you proceed with the appeal.

As you know, the Federal Circuit has a "longstanding policy of enforcing Rule 38 vigorously." *Walker v. Health Int'l Corp.*, 845 F.3d 1148, 1157 (Fed. Cir. 2017). An appeal is frivolous and sanctionable when "the judgment by the tribunal below was so plainly correct and the legal authority contrary to appellant's position so clear that there really is no appealable issue." *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 948 F.2d 1573, 1578 (Fed. Cir. 1991).

That is precisely the case here. For example, with respect to the patent infringement claim, Plaintiff presented no evidence in the District Court that ARGCO's wrenches include the required "threaded collar comprising a threaded interior wall." As we repeatedly explained, and as the District Court ruled, the alleged collar of ARGCO's wrenches is solid and has no interior wall at all. And the alleged threading of that component is actually a series of parallel teeth which fall outside any conceivable definition of "threaded." Moreover, those teeth are located on the exterior wall of the alleged collar, not any non-existent interior wall. Pursuit of this patent infringement claim on appeal would be frivolous.

With respect to the false marking claim, the District Court correctly found that Plaintiff did not present "any evidence that he suffered a loss of sales, reputation, or the ability to compete as a result of the Recessed Wrenches that were marked with the '931 patent number." Further, the District Court correctly found that the evidence establishes that Plaintiff consented to the patent marking and there is no evidence to the contrary. Plaintiff has never pointed to any contrary evidence in the record relating to either of these two holdings, and the pursuit of this claim therefore would also be frivolous.

Finally, the District Court's grant of summary judgment on Plaintiff's unfair competition claim is also unassailable. Plaintiff argued that the alleged false marking constitutes unfair competition. But, as

just explained, there is no genuine appealable issue regarding false marking. Plaintiff also argued ARGCO's filing of its patent invalidity counterclaim constituted unfair competition. But, as the District Court correctly held, the filing of this counterclaim falls squarely within the protections of the *Noerr-Pennington* doctrine. Plaintiff never raised a counter-argument in the District Court. Plaintiff next argued in the District Court that ARGCO somehow committed unfair competition by discouraging counsel from representing Plaintiff in this matter or otherwise "bullying" Plaintiff. However, as the District Court correctly found, the communications on which Plaintiff relies contain no such discouragement or bullying. Finally, Plaintiff argued to the District Court that ARGCO made disparaging statements to third parties. However, as the District Court again correctly found, Plaintiff pointed to no such disparaging statements in the record. Thus, again, pursuit of an appeal on this unfair competition claim would be frivolous.

We note that the Federal Circuit recently sanctioned you and another one of your clients in an amount exceeding $100,000 for your pursuit of a frivolous patent appeal under similar circumstances. *See Pop Top Corp. v. Rakuten Kobo Inc.*, 2022 WL 2751662 (Fed. Cir. July 14, 2022). We strongly encourage you not to pursue another frivolous appeal and we urge Mr. Hebert to withdraw this baseless appeal.

Sincerely,

Paul A. Stewart

56613789

# EXHIBIT 2

**Jeremiah Helm**

---

**From:** Knobbe, Martens, Olson, & Bear <lawtravelteamtwo@travelctm.com>
**Sent:** Tuesday, March 19, 2024 3:48 PM
**To:** 2Jgh; Elizabeth Ibarra
**Subject:** Ticketed itinerary for JEREMIAH SUTTER HELM on 3/31/24 to Washington (Washington Reagan Natl DC, USA)
**Attachments:** ItinWBHFID_19MAR.pdf; Calendar __19MAR.ics



Toll Free Number: 855.681.0783
Local Number: 720.956.6153
Email:lawtravelteamtwo@travelctm.com
Hours of Operation: 830am-8pm EST



Tuesday, 19MAR 2024 3:48 PM EDT
**Passengers**: **JEREMIAH SUTTER HELM**

Agency Reference Number: WBHFID

KNOBBE, MARTENS, OLSON BEAR
2040 MAIN STREET
IRVINE CA 92614
US

Review this itinerary for accuracy regarding flights/times/dates and personal information.
CTM must be notified within 24 hours regarding corrections.
Thank you for choosing CTM.
Agent: Sheetal Katyal

PENALTY INFORMATION - TICKET IS NON-REFUNDABLE NON-TRANSFERABLE
CHANGES ARE SUBJECT TO PENALTIES PLUS FARE INCREASE
SOME CARRIERS REQUIRE CANCELLATION PRIOR TO TIME OF DEPARTURE
OTHERWISE YOUR TICKET MAY HAVE NO VALUE. CALL THE TRAVEL OFFICE
IF YOU HAVE TO CHANGE OR CANCEL YOUR TRIP

| AIR | Sunday, 31MAR 2024 | | |
|-----|--------------------|-----|-----|
| | **United Airlines** | **Flight Number**: 1061 | Class: - ECONOMY |
| | **From**: (SNA) Santa Ana CA, USA | **Depart**: 9:00 PM | |
| | **To**: (EWR) Newark NJ, USA | **Arrive**: 5:11 AM 1APR | |
| | Stops: Nonstop | Duration: 5 hour(s) 11 minute(s) | |
| | Seats: 27A | Status: CONFIRMED | Miles: 2433 / 3893 KM |
| | Equipment: Boeing 737-700 Jet | MEAL: FOOD FOR PURCHASE | |
| | ARRIVES EWR TERMINAL C | | |
| | Frequent Flyer Number: UAEA724525 | | |

**EXHIBIT 2**

**United Airlines Confirmation number is HXR456**

| AIR | Monday, 1APR 2024 | | |
|---|---|---|---|

**United Airlines**
Operated By: UA-GOJET AIRLINES DBA UNITED EXPRESS — **Flight Number**: 4500 — Class: - ECONOMY

**From**: (EWR) Newark NJ, USA — **Depart**: 7:55 AM
**To**: (DCA) Washington Reagan Natl DC, USA — **Arrive**: 9:23 AM
Stops: Nonstop — Duration: 1 hour(s) 28 minute(s)
Seats: 16A — Status: CONFIRMED — Miles: 206 / 330 KM
Equipment: CR5/AIR — MEAL: NO MEAL SVC
DEPARTS EWR TERMINAL C - ARRIVES DCA TERMINAL 2
Frequent Flyer Number: UAEA724525

**United Airlines Confirmation number is HXR456**

| HOTEL | Sunday, 31MAR 2024 | | |
|---|---|---|---|

**Hampton INN Washington DC H ST** (HAMPTON INN)
1729 H Street Nw Washington DC 20006
**Number of Rooms**: 1 — **Confirmation Number**: 84934743
**Phone**: 1-202-296-1006 — Fax: 1-202-296-1008
**Rate**: USD 349.00 — Room GUARANTEED TO MASTER CARD
**Check Out**: Tuesday, 2APR 2024 — **Reserved For**: HELM JEREMIAH SUTTER

Hotel cancellation policy: Cancel 72 Hours Prior To Check-In Time To Avoid Penalties
Approximate total: 647.00 USD|209.00 EFF 31MAR-01APR|349.00 EFF 01APR-02APR
NS KING GUEST ARRIVAL 01APRIL 930AM

| AIR | Tuesday, 2APR 2024 | | |
|---|---|---|---|

**United Airlines**
**From**: (DCA) Washington Reagan Natl DC, USA — **Flight Number**: 2104 — Class: - ECONOMY
**To**: (DEN) Denver CO, USA — **Depart**: 4:15 PM
Stops: Nonstop — **Arrive**: 6:20 PM
Seats: 15A — Duration: 4 hour(s) 5 minute(s)
Equipment: Boeing 757 300 Jet — Status: CONFIRMED — Miles: 1488 / 2381 KM
DEPARTS DCA TERMINAL 2 — MEAL: Food and Bev for Purchase
Frequent Flyer Number: UAEA724525

**United Airlines Confirmation number is HXR456**

| AIR | Tuesday, 2APR 2024 | | |
|---|---|---|---|

**United Airlines**
**From**: (DEN) Denver CO, USA — **Flight Number**: 0281 — Class: - ECONOMY
**To**: (SNA) Santa Ana CA, USA — **Depart**: 7:45 PM
Stops: Nonstop — **Arrive**: 9:15 PM
Seats: 30A — Duration: 2 hour(s) 30 minute(s)
Equipment: Boeing 737-800 Jet — Status: CONFIRMED — Miles: 833 / 1333 KM
Frequent Flyer Number: UAEA724525 — MEAL: Food and Bev for Purchase

**United Airlines Confirmation number is HXR456**

FOR AFTERHOURS ASSISTANCE IN CASE OF EMERGENCY CALL
CALL 1-855-681-0783. IF YOU ARE OUTSIDE OF**

**EXHIBIT 2**

THE US PLEASE DIAL 720-956-6153****
CHANGE/CANCEL MAY RESULT IN A FARE INCREASE.
FARE IS NON-REFUNDABLE
NO SHOW MAY RESULT IN ADDITIONAL FEES/FORFEITURE/FLIGHT CANCELLATION

**Ticket/Invoice Information**

Ticket for:   JEREMIAHSUTTER HELM
Date issued:  3/19/2024      Invoice Nbr: 4746798

**Ticketed Carrier: UNITED AIRLINES INC.**
Ticket Nbr:   0168094989722   Electronic Tkt:  Yes    Amount:   1080.14
              Base:  959.01   US Tax:  71.93 USD    XT Tax:  49.20 USD
Charged to: CA************9031

Ticket for:   SUTTER HELM JEREMIAH
Ticket Nbr:   4285818054   Electronic Tkt:  No    Amount:   31.00
              Base:  31.00    Tax: 0.00
Charged to: CA************9031

Ticket for:   SUTTER HELM JEREMIAH
Ticket Nbr:   4285818071   Electronic Tkt:  No    Amount:   42.00
              Base:  42.00    Tax: 0.00
Charged to: CA************9031

Service fee:   JEREMIAH SUTTER HELM
Date issued:  3/19/2024
Document Nbr: 8900870568115                        Amount:    33.00
Charged to:   CA************9031

              Total Tickets:  1153.14
              Total Fees:      33.00
              Total Amount:  1186.14

Please check carry on requirements at www.tsa.gov.
Charges may apply for checked baggage. Contact carrier prior to travel.
For International Travel, please check the latest State Department Advisories.
Federal law forbids the carriage of certain hazardous materials, such as aerosols, fireworks, and flammable liquids, aboard the aircraft.
If you do not understand these restrictions, contact your airline or go to www.faa.gov.

Click here for CTM's Terms & Conditions information.

Effective May 7, 2025, air travelers with identification/ID/ that does not meet the Real ID Act requirements must present an alternate form of ID in order to board a domestic flight. Please see the Department of Homeland Security Website for more information.
WWW.DHS.GOV/REAL-ID

**EXHIBIT 2**

# EXHIBIT 3



Report of the Economic Survey

Prepared Under Direction of the
American Intellectual Property Law Association
Law Practice Management Committee

American Intellectual
Property Law Association
1400 Crystal Drive, Suite 600
Arlington, VA 22202

www.aipla.org

**EXHIBIT 3**



# Report of the
# Economic Survey
# 2023

**Prepared Under Direction of the**
**American Intellectual Property Law Association**
**Law Practice Management Committee**

**Nicholas Camillo, Chair**

**October 2023**

**Prepared by:**



10097 Tyler Court, Suite 3 ◼ Ijamsville, Maryland 21754
TEL: (240) 268-1262 ◼ ARI@associationresearch.com

**EXHIBIT 3**

## AIPLA Law Practice Management 2023 Economic Survey Participants

We would like to thank those who helped put together and review
this year's AIPLA Economic Survey:

**Nicholas Camillo**: Volkswagen Group of America – Chair of LPM Committee

**Sarah Knight**: Talem IP Law – Vice Chair of LPM Committee

**Ryan Dean**: Umberg Zipser, LLP, Co-Chair – Economic Survey Subcommittee

**John Gorecki**: Anderson Gorecki, LLP, Co-Chair – Economic Survey Subcommittee

**Angela Grayson**: University of Mississippi Medical Center – Board Liaison

---

### Economic Survey Subcommittee Members:

**Ryan Dean**: Umberg Zipser, LLP – Co-Chair

**John Gorecki**: Anderson Gorecki, LLP – Co-Chair

| | |
|---|---|
| **Ashraf Abdul-Mohsen**: ARI | **Megan Kirkegaard**: ARI |
| **Ariella Gordon**: AIPLA | **Meghan Donohoe**: AIPLA |

---

**©2023 AMERICAN INTELLECTUAL PROPERTY LAW ASSOCIATION**

ALL RIGHTS RESERVED. NO PART OF THIS BOOK MAY BE REPRODUCED OR TRANSMITTED IN ANY FORM OR BY ANY
MEANS, ELECTRONIC OR MECHANICAL, INCLUDING PHOTOCOPYING, RECORDING, OR BY AN INFORMATION STORAGE
AND RETRIEVAL SYSTEM, WITHOUT PERMISSION IN WRITING FROM THE PUBLISHER.

**PROVIDED DIGITALLY TO MEMBERS COMPLIMENTARY**
PRINTED COPIES OF THIS REPORT ARE AVAILABLE FROM **AIPLA** AT A COST OF **$75** PER COPY FOR MEMBERS
AND **$495** PER COPY FOR NON-MEMBERS.

**AMERICAN INTELLECTUAL PROPERTY LAW ASSOCIATION**
**1400 CRYSTAL DRIVE, SUITE 600**
**ARLINGTON VA 22202**
(703) 415-0780
WWW.AIPLA.ORG

**EXHIBIT 3**

# Table of Contents

INTRODUCTION ................................................................................................................... 1

DATA COLLECTION ............................................................................................................. 1

CHANGES TO THE SURVEY ................................................................................................. 1

DESCRIPTION OF STATISTICS AND FORMATTING CONVENTIONS ................................... 2

RESPONDENT BACKGROUND ............................................................................................ 4

IP BUDGET FOR CORPORATE PRACTITIONERS ................................................................ 12

INCOME RECEIVED IN 2022 AND PROJECTED FOR 2023, BILLING RATES, AND
BILLABLE HOURS ............................................................................................................... 15

SUMMARY OF SURVEY RESULTS BY PRACTICE TYPE ...................................................... 23
    SOLO PRACTITIONER .................................................................................................23
    PRIVATE FIRM, EQUITY PARTNER .............................................................................26
    PRIVATE FIRM, PARTNER-TRACK ..............................................................................30
    PRIVATE FIRM, NON-PARTNER TRACK .....................................................................33
    PRIVATE FIRM, OF COUNSEL ....................................................................................35
    HEAD OF CORPORATE IP DEPARTMENT ..................................................................38
    CORPORATE IP DEPARTMENT, ATTORNEY ..............................................................40
    PRIVATE FIRM, PATENT AGENT ...............................................................................42

TYPICAL CHARGES FOR IP LAW SERVICES ..................................................................... 43

TYPICAL TYPE OF FEE FOR IP LAW SERVICE CHARGES ................................................. 54

TYPICAL COSTS OF LITIGATION ...................................................................................... 61

CHARACTERISTICS OF FIRMS .......................................................................................... 82
    NUMBER AND TYPE OF ATTORNEYS ......................................................................82
    ASSOCIATE STARTING SALARY AND SUMMER MONTHLY PAY ...............................93
    PATENT AGENTS AND SUPPORT STAFF ..................................................................96
    BILLING RATES AND PRACTICES .............................................................................101
    LIABILITY INSURANCE .............................................................................................105

STATISTICAL TABLES.............................................................................................. Appendix A
    INDIVIDUAL DATA ............................................................................... I-1 to I-217
    FIRM DATA ............................................................................................ F-1 to F-58

SURVEY INSTRUMENTS .......................................................................................... Appendix B

**EXHIBIT 3**

**STATISTICAL TABLES**

**INDIVIDUAL DATA**
**All Respondents**..............................................................................................................I-1
Background ....................................................................................................................I-1
Work remotely in 2022 (Q3a)..........................................................................................I-3
Work remotely in 2022, percent of time (Q3b) ..............................................................I-3
Work remotely in 2022, miles between remote work location and office (Q3c) ..............I-4
Continue working remotely in 2023 (Q4a).......................................................................I-4
Continue working remotely, percent of time (Q4b) ........................................................I-5
Work full-time (Q5)..........................................................................................................I-5
Major field of academic study (Q11) ...............................................................................I-6
Total Gross Income for 2022 from your primary practice – Full-time Only (Q13a) ...........I-7
Amount of year-end cash bonus (Q13b)...........................................................................I-7
Employer's 2022 contribution to 401(k)/403(b) retirement and savings plans (Q14) .......I-8
Expected total cash income for 2023 – Full-time Only (Q15) ...........................................I-8
Total Gross Income for 2022 from your primary practice – Part-time Only (Q13a) ...........I-9
Expected total cash income for 2023 – Part-time Only (Q15) ...........................................I-9
Full-time IP lawyers and patent agents at all locations (Q19)...........................................I-9
Billable hours, Billing rate, Dollars billed (Q32, Q33, Q30) ..............................................I-11
Percentage of work billed at discounted hourly billing rate (Q36)...................................I-11
Average hourly billing rate change in 2022 (Q34)..............................................................I-12
If average hourly billing rate changed in 2022, how did it change (Q35) ..........................I-12
Percentage of work billed under alternative fee arrangement (Q37)................................I-12
Percent of services in 2022 that were billed (or will be billed) by type of basis (Q31) ......I-13
Average hours per week spent on business development (Q38) ........................................I-13

**Solo Practitioner** ..........................................................................................................I-14
Background Information ...................................................................................................I-14
Total Gross Income for 2022 from your primary practice – Full-time Only (Q13a) ...........I-15
Total Gross Income for 2022 by type of work – Full-time Only (Q13a)..............................I-15
Employer's 2022 contribution to 401(k)/403(b) retirement and savings plans (Q14) .......I-16
Expected total cash income for 2023 – Full-time Only (Q15) ...........................................I-17
Percent of time devoted to types of work, by Income Level (Q18)....................................I-18
Percent of time devoted to IP areas, by Income Level (Q16).............................................I-19
New priority US and PCT Patent applications prepared and filed in 2022 (Q20)...............I-19
Billable hours recorded in 2022 (Q32)..............................................................................I-20
Average hourly billing rate in 2022 (Q33).........................................................................I-21
Percent of services in 2022 that were billed (or will be billed) by type of basis (Q31) ......I-22
Dollar amount billed for legal services performed in 2022 (Q30)......................................I-23

**Private Firm, Equity Partner** .......................................................................................I-24
Background Information ...................................................................................................I-24
Total Gross Income for 2022 from your primary practice – Full-time Only (Q13a) ...........I-25
Total Gross Income for 2022 by type of work – Full-time Only (Q13a)..............................I-26
Amount of year-end cash bonus (Q13b)...........................................................................I-27
Employer's 2022 contribution to 401(k)/403(b) retirement and savings plans (Q14) .......I-28
Expected total cash income for 2023 – Full-time Only (Q15) ...........................................I-29
Percent of time devoted to types of work, by Income Level (Q18)....................................I-30
Percent of time devoted to IP areas, by Income Level (Q16).............................................I-31
New priority US and PCT Patent applications prepared and filed in 2022 (Q20)...............I-32
Billable hours recorded in 2022 (Q32)..............................................................................I-33
Average hourly billing rate in 2022 (Q33).........................................................................I-34
Percent of services in 2022 that were billed (or will be billed) by type of basis (Q31) ......I-35
Dollar amount billed for legal services performed in 2022 (Q30)......................................I-36

**Private Firm, Partner-Track Attorney** .........................................................................I-37
Background Information ...................................................................................................I-37
Total Gross Income for 2022 from your primary practice – Full-time Only (Q13a) ...........I-38
Total Gross Income for 2022 by type of work – Full-time Only (Q13a)..............................I-39
Amount of year-end cash bonus (Q13b)...........................................................................I-40
Employer's 2022 contribution to 401(k)/403(b) retirement and savings plans (Q14) .......I-41

**EXHIBIT 3**

## Average hourly billing rate in 2022 (Q33)

*Private Firm, Equity Partner*

| | | Average hourly billing rate in 2022 | | | | |
|---|---|---|---|---|---|---|
| | | Number of Individuals | Mean (Average) | First Quartile 25% | Median (Midpoint) | Third Quartile 75% |
| All Individuals | | 218 | $585 | $400 | $500 | $661 |
| Years of IP Law Attorney Experience | 7-9 | 3 | $643 | ISD | $500 | ISD |
| | 10-14 | 26 | $527 | $350 | $450 | $500 |
| | 15-24 | 75 | $545 | $395 | $475 | $687 |
| | 25-34 | 89 | $610 | $418 | $525 | $663 |
| | 35 or More | 19 | $694 | $500 | $610 | $700 |
| Location | Boston CMSA | 4 | $713 | $431 | $713 | $994 |
| | NYC CMSA | 17 | $761 | $500 | $670 | $1,025 |
| | Philadelphia CMSA | 8 | $620 | $481 | $575 | $825 |
| | Washington, DC CMSA | 20 | $702 | $478 | $603 | $995 |
| | Other East | 16 | $543 | $376 | $488 | $595 |
| | Metro Southeast | 11 | $557 | $400 | $500 | $540 |
| | Other Southeast | 8 | $433 | $377 | $435 | $483 |
| | Chicago CMSA | 14 | $630 | $494 | $623 | $654 |
| | Minne.-St. Paul PMSA | 16 | $495 | $353 | $468 | $614 |
| | Other Central | 38 | $441 | $341 | $403 | $513 |
| | Texas | 23 | $619 | $450 | $500 | $850 |
| | Los Angeles CMSA | 5 | $560 | $365 | $500 | $785 |
| | San Francisco CMSA | 6 | $993 | $534 | $810 | $1,546 |
| | Other West | 32 | $565 | $403 | $448 | $600 |
| IP Technical Specialization (>=50%) | Biotechnology | 10 | $631 | $405 | $560 | $813 |
| | Chemical | 9 | $495 | $358 | $450 | $580 |
| | Computer Hardware | 3 | $440 | ISD | $470 | ISD |
| | Computer Software | 25 | $596 | $400 | $495 | $700 |
| | Electrical | 17 | $596 | $400 | $550 | $710 |
| | Mechanical | 36 | $473 | $376 | $440 | $524 |
| | Medical/Health Care | 9 | $478 | $335 | $435 | $615 |
| | Pharmaceutical | 3 | $856 | ISD | $687 | ISD |
| Age | 35-39 | 16 | $486 | $350 | $445 | $494 |
| | 40-44 | 22 | $583 | $358 | $470 | $588 |
| | 45-49 | 24 | $581 | $400 | $485 | $784 |
| | 50-54 | 43 | $521 | $390 | $475 | $600 |
| | 55-59 | 57 | $636 | $425 | $550 | $685 |
| | 60 or Older | 51 | $595 | $420 | $520 | $650 |
| Gender | Male | 175 | $585 | $400 | $500 | $650 |
| | Female | 36 | $524 | $386 | $475 | $615 |
| | Prefer not to respond | 4 | $570 | $383 | $453 | $875 |
| Highest Non-Law Degree | Bachelor's Degree | 143 | $567 | $400 | $495 | $625 |
| | Master's Degree | 50 | $601 | $411 | $500 | $705 |
| | Doctorate Degree | 21 | $594 | $395 | $540 | $725 |
| Ethnicity | White/Caucasian | 178 | $569 | $400 | $500 | $650 |
| | Black/African American | 3 | $450 | ISD | $450 | ISD |
| | Hispanic/Latino | 3 | $1,050 | ISD | $850 | ISD |
| | Asian/Pacific Islander | 8 | $554 | $343 | $413 | $851 |
| | Mixed Race | 7 | $475 | $400 | $450 | $550 |
| | Prefer not to respond | 13 | $699 | $453 | $535 | $1,013 |
| | Other | 3 | $610 | ISD | $555 | ISD |
| Full-time Intellectual Property lawyers and agents in the firm or corporation | 1-2 | 24 | $441 | $356 | $423 | $499 |
| | 3-5 | 36 | $498 | $381 | $418 | $515 |
| | 6-10 | 21 | $449 | $393 | $440 | $550 |
| | 11-25 | 42 | $548 | $397 | $475 | $626 |
| | 26-50 | 25 | $562 | $438 | $500 | $640 |
| | 51-100 | 36 | $674 | $500 | $625 | $851 |
| | 101-150 | 11 | $656 | $360 | $650 | $850 |
| | More than 150 | 18 | $1,026 | $768 | $1,015 | $1,313 |

**EXHIBIT 3**